IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PATRICIA PAANANEN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:16-cv-01169-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

Plaintiff Patricia Paananen ("Paananen") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned RECOMMENDS that United States District Judge Reed O'Connor AFFIRM the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.     STATEMENT OF THE CASE**

Paananen filed her application for DIB on April 13, 2013, alleging that her disability began on November 8, 2011. (Transcript ("Tr.") 12). The Commissioner initially denied her claim on September 11, 2013, and denied it upon reconsideration on December 17, 2013. *Id*. Paananen requested a hearing, which was held before Administrate Law Judge ("ALJ") Ward D. King on

December 15, 2014 in Fort Worth, Texas, with Paananen and her attorney present. *Id.* The ALJ issued his decision on November 10, 2015, finding that Paananen was not disabled. (Tr. 9).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Paananen had not engaged in substantial gainful activity during the period from her alleged disability onset date of November 8, 2011, through her date last insured of June 30, 2013. (Tr. 14). At step two, the ALJ determined that Paananen, through the date last insured, had the following impairments: inflammatory arthritis, fibromyalgia, anxiety, bilateral shoulder bursitis, acid reflux, chronic kidney disease, hypertension, and asthma. (Tr. 15). At step three, the ALJ found that Paananen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404(p). *Id.* In particular, the ALJ concluded that Paananen retained the residual functional capacity ("RFC") to lift, carry, push, pull 20 pounds occasionally, and 10 pounds frequently; sit, stand, or walk throughout an 8-hour workday; and otherwise perform the full range of light work, as defined in 20 C.F.R. 404.1567(b). (Tr. 17). Additionally, the ALJ determined that Paananen was limited to occupations involving detailed, but not complex, instructions, and she could have no extensive or involved contact with the general public or supervisors. *Id.* At step four, the ALJ decided that Paananen was capable of performing past relevant work as a data entry clerk. (Tr. 21).

The Appeals Council denied review on October 27, 2016. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Paananen's pleadings, testimony at the administrative hearing, and the administrative record, Paananen was 61 years old on the alleged disability onset date and 64 at the time of the hearing (Tr. 31). She completed a high-school education. (Tr. 36). Her employment history included work as an assistant manager, bookkeeper, data entry clerk, and sales associate. (Tr. 212). Paananen asserts that her mental and physical impairments render her disabled under the SSA. (Tr. 187).

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt.

P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.   ANALYSIS

Paananen raises one issue on appeal. She claims that there is not substantial evidence to support a finding that she can return to her past relevant work. (Plaintiff's Brief ("Pl.'s Br.") at 11). The ALJ ultimately determined that Paananen could return to her work as a data entry clerk. (Tr. 21). The ALJ cited the Dictionary of Occupational Titles ("DOT"), which characterizes the occupation of a data entry clerk as sedentary, semi-skilled work under Number 203.582-054. *Id.*

Paananen challenges the ALJ's findings regarding her mental impairments and limitations. Paananen does not cite to any evidence in the record that contradicts the ALJ's findings concerning her mental impairments and limitations. However, there is substantial evidence in the record that supports the ALJ's findings. The ALJ relied on several medical opinions when determining Paananen's mental impairments and ultimately found that Paananen was capable of thinking clearly, performing tasks involving detailed but not complex instructions, and performing occupations with no extensive contact with supervisors or the general public. (Tr. 15-21). In reaching this determination, the ALJ considered Paananen's mental examination on May 28, 2013, in which Dr. Naus observed that Paananen had coherent speech; had normal psychomotor activity limits; was oriented to person, place, time, and situation; and that her memory, logical thought processes, judgment were intact. (Tr. 498-504). The ALJ also cited the July 17, 2013 examination conducted by Dr. Manuel, who opined that Paananen's mood disorder had minimal interference on her ability to make adequate occupational and social adjustments and that Paananen was psychologically capable of working at any job for which she was qualified. (Tr. 491-497). Considering these medical opinions, the ALJ determined that Paananen had a Global Assessment of Functioning score of 65, which is indicative of only mild symptoms and only a slight limitation

in social or occupational functioning. (Tr. 17). Based on the foregoing, the Court finds that substantial evidence in the record supports the ALJ's determination that Paananen was mentally capable of "perform[ing] tasks involving detailed, but not complex, instructions and perform occupations with no extensive contact with supervisors or the general public." *Id.*

Paananen specifically asserts that the ALJ did not "make a findings of fact about the mental demands of Paananen's past job as a data entry clerk or how the found RFC would permit a return to her past job as a data entry clerk." (Plaintiff's Reply (Pl.'s Reply) at 8). The DOT provides that a data entry clerk requires a level 3 reasoning finding, ensuring that the claimant can apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables in standardized situations. U.S. Dep't of Labor, Dictionary of Occupational Titles no. 203.582–054 (4th ed., rev. 1991). Paananen contends that the ALJ's findings of Paananen's mental limitations are in direct conflict with the DOT requirements for a data entry clerk. (Pl.'s Reply at 5). In his decision, the ALJ found that Paananen was capable of "perform[ing] tasks involving detailed, but not complex, instructions and perform occupations with no extensive contact with supervisors or the general public." (Tr. 17). While Paananen argues that by definition level 3 reasoning in the DOT requires "the ability to carry out *more* than detailed written or oral instructions[,]" (Pl.'s Reply at 8), this is incorrect. The level 3 reasoning of the DOT instead requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." U.S. Dep't of Labor, Dictionary of Occupational Titles at Appendix. C (4th ed., rev. 1991). It does not require "more" than detailed instructions as reference by Paananen. (Pl.'s Reply at 8). Therefore, the DOT data entry requirement to carry out detailed instructions was satisfied by the ALJ's findings that Paananen could perform tasks involving detailed instructions. (Tr. 17).

Additionally, Paananen asserts that the ALJ failed to discuss the amount of contact a data entry clerk has with the general public or supervisors. (Pl.'s Br. at 12). However, the ALJ stated that he considered Paananen's past relevant work as a data entry clerk and cited to the DOT Number 203.582-054. (Tr. 21). Pursuant to the DOT, the data entry clerk also requires a code 8 finding for relationships with people, which is defined as "[a]ttending to the work assignment instructions or orders of supervisor," and "[n]o immediate response required unless clarification of instructions or orders is needed." U.S. Dep't of Labor, Dictionary of Occupational Titles at Appendix. B (4th ed., rev. 1991). The guide for a data entry clerk in the DOT does not require extensive contact with supervisors or the general public, but instead provides that the claimant be able to attend to work assignments, instructions, or orders of supervisors. Therefore, the ALJ's findings that Paananen was capable of "perform[ing] tasks involving detailed, but not complex, instructions and perform occupations with no extensive contact with supervisors or the general public[,]" does not conflict with the DOT guide for data entry clerks. (Tr. 17).

While Paananen highlights that the ALJ solely referenced the physical demands of her past work but not the mental demands (Plaintiff's Sur Sur Reply at 8), the ALJ also referenced the DOT and the work Paananen actually performed as described in her testimony and her work history report. (Tr. 21). The ALJ was not required to repeat his analysis of Paananen's mental limitations when he determined that she was capable of performing her past relevant work as a data entry clerk. Additionally, the DOT provision cited by the ALJ includes mental demands. U.S. Dep't of Labor, Dictionary of Occupational Titles no. 203.582-054 (4th ed., rev. 1991).

Even if the ALJ should have specifically stated that he considered the mental demands of Paananen's past work in reaching his conclusion, his failure to do so is harmless error on these facts. "The major policy underlying the harmless error rule is to preserve judgments and avoid

waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "Procedural perfection in administrative proceedings is not required" as long as "substantive rights of the party have not been affected." *Morris v. Bowen*, 846 F.2d 333, 335 (5th Cir. 1998) (quoting *Mays*, 837 F.2d at 1364). To show prejudice, Paananen must point "to evidence that would have been adduced and that could have changed the results." *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). As addressed above, the ALJ fully analyzed both Paananen's mental and physical impairments and the limitations associated with each. (Tr. 15-21). Additionally, there is substantial evidence in the record to support the ALJ's finding that Paananen met the requirements of a data entry clerk pursuant to the Dictionary of Occupational Titles Number 203.582-054. Therefore, the ALJ's repeating that he considered the mental demands of Paananen's past work would not have altered his conclusion that Paananen could return to that previous work as a data entry clerk. The record supports the ALJ's determination that Paananen's mental limitations were within the scope of the mental requirements to hold employment as a data entry clerk as specified by the DOT.

## V.   CONCLUSION

The ALJ properly considered both Paananen's mental and physical impairments when finding that she could return to her past relevant work as a data entry clerk. The ALJ employed the correct legal standards, and substantial evidence supports the ALJ's decision.

## RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's

proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **August 10, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed July 27, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE